UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LEONIE L. McCANN, an individual, | Case No. 2:14-cv-00337-MMD-CWH |
| Plaintiff, | |
| v. | ORDER |
| PNC MORTGAGE, NEVADA LEGAL NEWS, LLC, a Nevada Limited Liability Company, et al., | |
| Defendants. | |

I.      **SUMMARY**

Before the Court is Plaintiff Leonie L. McCann's Application for Temporary Restraining Order and Motion for Preliminary Injunction and Declaratory Judgment on Order Shortening Time ("Motion for TRO and PI"). (Dkt. no. 1-6, Ex. F.) For the reasons set out below, Plaintiff's request for injunctive relief is denied.

II.      **BACKGROUND**

Plaintiff's Amended Complaint, filed in district court in Clark County, Nevada, alleges the following. Plaintiff purchased a residential property at 11083 Ampus Place, Las Vegas, NV 89141 ("Property") on August 26, 2002. (Dkt. no. 1-5, Ex. E at 3.) In March, 2013, PNC became trustee. (*Id.*) After Plaintiff had difficulty making her loan payments, PNC sent Plaintiff documents offering alternatives to foreclosure, including requesting a loan modification and short sale. (*Id.*) Plaintiff's request for a loan modification was denied. (*Id.* at 4.) On May 8, 2013, PNC sent Plaintiff a letter with a Notice of Breach and Default and Election to Cause Sale of Real Property Under Deed

1  of Trust, but failed to provide the documents necessary for Plaintiff to participate in the

2  Nevada Supreme Court Foreclosure Mediation Program. (*Id.*) PNC sent Plaintiff two

3  subsequent letters falsely stating that Plaintiff withdrew her request for loan modification.

4  (*Id.*) A Notice of Trustee's Sale was filed on November 14, 2013, setting a sale date of

5  December 4, 2013. (*Id.*) PNC allowed Plaintiff to short sale her home but a buyer

6  cancelled the purchase agreement. (*Id.* at 5.) Plaintiff found another buyer with a closing

7  date of December 30, 2013, but PNC rejected the short sale offer. (*Id.*) Plaintiff declared

8  bankruptcy on December 3, 2013, and received a letter from PNC saying she still had

9  options to redeem her home, but PNC did not respond to further attempts by Plaintiff to

10  make contact. (*Id.*) Plaintiff's bankruptcy case was dismissed on January 22, 2014, and

11  the Property was auctioned off on February 5, 2014, without further notice to the Plaintiff.

12  (*Id.*) The Amended Complaint asserts claims of wrongful foreclosure, quiet title,

13  negligence and negligent misrepresentation.

14        This matter comes to the Court from a petition for removal filed by Defendant

15  PNC Mortgage ("PNC") on March 5, 2014. (Dkt. no. 1.) The petition for removal attached

16  Plaintiff's Motion for TRO and PI filed in Clark County, Nevada. (Dkt. no. 1-6, Ex. F.) The

17  Court entered a minute order instructing the parties to file a status report to provide an

18  update on the briefing schedule for the motion for preliminary injunction. (Dkt. no. 5.) On

19  March 12, 2014, Plaintiff and PNC filed a joint status report in which they agreed to a

20  March 26, 2014, deadline for PNC's response to the Motion for TRO and PI and an April

21  7, 2014, deadline for Plaintiff to file a reply. (Dkt. no. 9.) PNC filed its response on March

22  26, 2014. (Dkt. no. 15.) Plaintiff did not file a reply by the agreed-upon deadline and has

23  yet to file a reply.[1]

24

25  [1]On March 26, 2014, PNC filed a Motion to Dismiss or, Alternatively, Motion for
Summary Judgment. (Dkt. no. 13.) In Plaintiff's opposition to that motion, she briefly

26  mentions her "motion for TRO" and asks that it be granted. (Dkt. no. 18 at 16.) Plaintiff's
opposition was filed on April 12, 2014, seventeen (17) days after the parties' agreed-

27  upon deadline for Plaintiff's reply in further support of her Motion for TRO and PI. To the
extent that Plaintiff intended her opposition to also serve as her reply in further support

28  of her Motion for TRO and PI, it is untimely, procedurally improper, and fails to address
*(fn. cont…)*

III.   **DISCUSSION**

    A.   **Legal Standard**

    The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the Court determine whether Plaintiff has established the following: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

    Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting: "[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high . . . . This Court has never rejected that formulation, and I do not believe it does so today."); *see*

---

(...fn. cont.)
PNC's response and the required elements for injunctive relief. Further, the heading of Plaintiff's opposition gives no indication that it is also a reply in further support of her Motion for TRO and PI and Plaintiff has not asked the Court for an extension of time. The Court will therefore not construe Plaintiff's opposition (dkt. no. 18) as a reply in further support of her Motion for TRO and PI.

1   *also Alliance*, 632 F.3d at 1131. Instead, the portion of the sliding-scale test that allowed

2   injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the

3   plaintiff, was expressly overruled by *Winter. See Stormans, Inc. v. Selecky*, 586 F.3d

4   1109, 1127 (9th Cir. 2009). The Ninth Circuit has since found that post-*Winter*, the

5   sliding-scale approach, or "serious questions" test "survives . . . when applied as part of

6   the four-element *Winter* test." *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious

7   questions going to the merits' and a hardship balance that tips sharply toward the

8   plaintiff can support issuance of an injunction, assuming the other two elements of the

9   *Winter* test are also met." *Id.*

10          An even more stringent standard is applied where mandatory, as opposed to

11   prohibitory, preliminary relief is sought. The Ninth Circuit has noted that although the

12   same general principles inform the court's analysis, "[w]here a party seeks mandatory

13   preliminary relief that goes well beyond maintaining the status quo pendente lite, courts

14   should be extremely cautious about issuing a preliminary injunction." *Martin v. Int'l

15   Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) (citation omitted). Thus, an award of

16   mandatory preliminary relief is not to be granted unless both the facts and the law clearly

17   favor the moving party and extreme or very serious damage will result. *See Anderson v.

18   United States*, 612 F.2d 1112, 1114-15 (9th Cir. 1979) (citations omitted). "[I]n doubtful

19   cases" a mandatory injunction will not issue. *Id.*

20          **B.    Analysis**

21          The Property was sold at a trustee's sale on February 5, 2014. (Dkt. no. 1-5, Ex.

22   E at 5.) Plaintiff asks the Court to return the Property to Plaintiff, halt any further

23   foreclosure attempts by PNC, issue sanctions against PNC for wrongful foreclosure, and

24   order PNC to participate in the Nevada Supreme Court Foreclosure Mediation Program.

25   (Dkt. no. 1-6, Ex. F at 5, 9-10, 12.) Plaintiff's requested relief thus goes well beyond

26   maintaining the status quo pendente lite. The Court must therefore be cautious about

27   granting the requested injunctive relief and "deny such relief 'unless the facts and law

28   ///

4

1  clearly favor the moving party.'" *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir.
2  1994) (*quoting Anderson*, 612 F.2d at 1114).

3  **1.    Wrongful foreclosure, quiet title and negligence claims**

4  Plaintiff asserts two claims for wrongful foreclosure: (1) PNC failed to provide
5  proper notice for the February 5, 2014, sale under NRS 107.087; and (2) PNC failed to
6  mention the Nevada Supreme Court Foreclosure Mediation Program in its May 8, 2013,
7  letter. (*See* dkt. no. 1-5, Ex. E at 5-8.) Plaintiff's wrongful foreclosure claims also form the
8  basis for two other claims in the Amended Complaint:  (1) quiet title; and (2) negligence
9  against Defendant Nevada Legal News, LLC, which conducted the foreclosure sale and
10  auction. (*See id.* at 8-10.) Based on a review of the Amended Complaint and the parties'
11  filings regarding Plaintiff's Motion for TRO and PI, the Court determines that Plaintiff has
12  not demonstrated that she is likely to succeed in her wrongful foreclosure, quiet title and
13  negligence claims.

14  With regard to notice of the February 5, 2014, sale, it is undisputed that PNC filed
15  a notice of sale for the December 4, 2013, sale date. (*Id.* at 4.) As set out in the
16  Amended Complaint, Plaintiff then filed for bankruptcy on December 3, 2013, one day
17  before the scheduled sale. (*Id.* at 5.) PNC provides the declaration of Esther Valenzuela,
18  Foreclosure Manager of trustee Pite Duncan, which states that the December 4, 2013,
19  sale date was orally postponed twice due to the ongoing bankruptcy proceedings and
20  eventually scheduled for February 5, 2014, after the bankruptcy case was dismissed on
21  January 22, 2014. (*See* dkt. no. 13-1, Ex. 1.) PNC points out that NRS 107.082(2)
22  permits three oral postponements before a new notice must be issued. (Dkt. no. 15 at 8.)
23  With regard to PNC's alleged failure to mention the Nevada Supreme Court Foreclosure
24  Mediation Program in its May 8, 2013, letter, PNC provides the Court with a copy of the
25  entire mailing complete with signed affidavit of mailing, which reveals that the notice of
26  default attached to the May 8, 2013, letter contained information on the Nevada
27  Supreme Court Foreclosure Mediation Program including instructions on how to
28  participate and an election/waiver of mediation form. (Dkt. no. 13-2, Ex. 1-A.)

1    Further, the tort of wrongful foreclosure recognized by the Nevada Supreme Court

2    requires a borrower to "establish that at the time the power of sale was exercised or the

3    foreclosure occurred, no breach of condition or failure of performance existed on the

4    [borrower's] part which would have authorized the foreclosure or exercise of the power of

5    sale." *Collins v. Union Fed. Sav.& Loan Ass'n*, 99 Nev. 284, 304 (1983) (citations

6    omitted). To the Court's knowledge, *Collins* articulates the only basis for a claim of

7    wrongful foreclosure under Nevada law. However, the Amended Complaint does not

8    allege that Plaintiff made her mortgage payments as required. In fact, Plaintiff's filings

9    suggest the opposite. The Amended Complaint states that Plaintiff had difficulty paying

10   her mortgage in August 2012 (dkt. no. 1-5, Ex. E at 3), and in Plaintiff's Motion for TRO

11   and PI, Plaintiff's attorney states that Plaintiff "diligently made payments until August of

12   2012" (dkt. no. 1-6, Ex. F at 4).

13      Preliminary injunctive relief is thus not appropriate as Plaintiff has not

14   demonstrated that she is likely to succeed in her wrongful foreclosure, quiet title and

15   negligence claims.

16                              **2.    Negligent misrepresentation claim**

17      The remaining claim in the Amended Complaint is for negligent misrepresentation

18   regarding PNC's alleged false statements to Plaintiff that PNC did not participate in the

19   Home Affordable Modification Program ("HAMP") and false statement that Plaintiff

20   withdrew her request for loan modification. (Dkt. no. 1-5, Ex. E at 10.) With regard to that

21   claim, Plaintiff has failed to demonstrate irreparable harm will result if the Court does not

22   grant mandatory preliminary relief.  Plaintiff's claim for negligent misrepresentation seeks

23   monetary damages only. (*See id.* at 10-12.) Indeed, Nevada has adopted the

24   Restatement (Second) of Torts definition of negligent misrepresentation, which states

25   that "[o]ne who . . . supplies false information for the guidance of others in their business

26   transactions, is subject to liability for *pecuniary* loss caused to them by their justifiable

27   reliance upon the information, if [one] fails to exercise reasonable care or competence in

28   obtaining or communicating the information." *Niehaus v. Greyhound Lines, Inc.*, 173 F.3d

1207, 1212 (9th Cir. 1999) (emphasis added) (citing *Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nev.*, 94 Nev. 131, 134 (1978)). The Restatement thus confines a tortfeasor's liability to "*losses incurred* in the kind of transaction in which the misrepresentation is expected to influence them." *In re Agribiotech*, 291 F. Supp. 2d 1186, 1192 (D. Nev. 2003) (emphasis added). "[M]onetary injury is not normally considered irreparable." *See, e.g., L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). In the event that Plaintiff prevails in her negligent misrepresentation claim, she may recover her pecuniary loss. She will not suffer irreparable harm as to that claim if the Court does not return the Property to Plaintiff and order PNC to engage in mediation at this preliminary stage.

The facts and the law in this case do not clearly favor Plaintiff and mandatory preliminary injunctive relief is therefore not warranted. *Stanley*, 13 F.3d at 1320. Plaintiff has not demonstrated a likelihood of success as to her wrongful foreclosure, negligence and quiet title claims, and monetary damages are an adequate compensation for her alleged injury as a result of PNC's alleged negligent misrepresentations. Preliminary injunctive relief is therefore denied.

## IV.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Plaintiffs' Motion for TRO and PI (dkt. no. 1-6, Ex. F) is denied.

DATED THIS 24th day of April 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE